Case number 4-16-0015, People v. Gerald Long. Appearing for Mr. Long is attorney Susan Wilhelm. And for the State is attorney Linda McBain. Good afternoon. Ms. Wilhelm, are you ready to proceed? May it please this Court, Counsel, I'm Susan Wilhelm with the Office of the State Appellate Defender, and I represent the defendant, Gerald Long. And today I'll be focusing on the first and third arguments in my brief. The trial court erred when it failed to suppress the seizure of Gerald's cell phone, which was taken from him during an unlawful detention. The search warrant only authorized the police to search the premises at 266 Lisa Drive. But the trial court upheld the seizure of the phone and its micro SD card because it believed that Lt. Walker had the right to detain Long in conjunction with the search warrant. But under Bailey v. U.S., the court found that once the occupant of the residence is beyond the immediate vicinity of the premises that are being searched, any brief stop for questioning must be based upon reasonable suspicion. Here, Gerald had already left the trailer and was in fact leaving the trailer park when he first encountered officers. He was not present where or when the warrant was executed and that trial court's ruling was therefore an error on that section. And Lt. Walker did not have a reasonable suspicion to detain Gerald Long. Terry stops have to be justified at their inception and reasonably related in scope to the circumstances justifying that interference. Here, the stop is not justified. There is no reasonable suspicion that Gerald is engaged in criminal activity. There is a search underway, but the search is only to gather evidence, and the police were still investigating. There was no warrant for my client's arrest. The state relies on Hensley, which was a very limited, fact-specific holding. And in Hensley, the officers knew that an armed robbery had already occurred and an informant had told them that Hensley drove the getaway car. Hensley had disappeared and they were looking for him. The court in Hensley was very clear its analysis applies to completed crime. And again here, the police were still investigating and collecting evidence to see if a crime had occurred. Ms. Wilhelm, may I ask in regards to Hensley, is the difference between what occurred in Hensley and what occurred here that in Hensley, the trial court had been presented with evidence supporting the issuance of the police bulletin or police flyer, and in this case, there wasn't any evidence presented to the trial court in regards to the police briefing and the substance of the police briefing? It is difficult to tell exactly what Lieutenant Walker knew at that time because his testimony at the motion to suppression hearing did not necessarily touch on this issue of reasonable suspicion. But I believe the real problem here is that this is still an active investigation. In Hensley, once again, we know that a crime occurred in Hensley and Hensley was implicated in that crime. Here, this is an ongoing investigation into a router at a home and there are several people in that home. There's nothing identifying my client. First of all, there's not a completed crime and there's nothing pinpointing my client. And for those reasons, I don't believe that a reasonable suspicion existed to stop my client. And even if they were justified in stopping him, the scope of the stop was so quickly enlarged. The officer gave several reasons. He said he stopped him so that he could tell Gerald about the search and to see if Gerald had weapons in his vehicle. But officer safety couldn't have been his concern. Gerald was away from the scene of the search. If he had weapons in his vehicle, he wouldn't have been bringing them back, except that he was stopped by the police and told about the search. His residence is the subject of a search warrant. He's seen leaving, or the officer's told he's seen leaving the approximate area of his home. The police officer knows that he's the target of the investigation. Would that be accurate? That is accurate. He's the target. And that they've been told that he has weapons in the home and an inference would be he has access to weapons, whether he has them in the car or not. So it's not reasonable in those circumstances to stop him? It's not reasonable in what happened here, Your Honor. Had they stopped him? Had they patted him down or asked him about weapons? But they didn't do that. They stopped him and then allowed him to return to the home without doing anything to ascertain whether or not he was at risk. He was away from the home. Well, they did a view of the... I mean, I assume the officer could see inside the vehicle. I mean, he didn't search the vehicle, but, well, how did he see the phone? Because Gerald was on the phone. Oh, well, he could see the seats and the... The same thing an officer does when he comes up to a car. Usually, though, there's more of a pat-down for officer safety. No, no, I meant... He looks in the car for things that are in plain view. Yes. He did that, he didn't see anything. No, but he also brought my client back to the scene. My client was away from the scene, and officer safety had been achieved by my client leaving the scene. But he brought him back by letting him drive his own car back to the scene. Yes, without securing it in any way. So why isn't Bailey... Why wouldn't Bailey allow the officer to do this? The factors that Judge Connacht just identified seem, under Bailey, would allow for the stop of the defendant. What is it that makes this case unique and not governed by Bailey? I think one of the problems here... It is governed by Bailey in the sense that, in Bailey, because once the court reached that ruling that he was too far away from the home, and that we were looking for reasonable suspicion, the court remanded the case back to the trial court for determination of whether there was probable... I'm sorry, reasonable suspicion. And here, I think we're kind of in an awkward situation because we're gleaning facts from the record, trying to find whether or not reasonable suspicion existed when the trial court wasn't asked that question. And so, since Bailey controls, it may be appropriate for this court to remand and allow the trial court to reopen this for that limited question of whether or not Officer Walker truly had reasonable suspicion to stop him once he was away from the scene. Well, if Bailey applies, then we don't get... Do we get to the Terry portion of the analysis? That is the only... That would be the exception. He could have stopped him. He can't stop him... Under Bailey, he cannot stop him, but he could have stopped him if he had reasonable suspicion. Okay, why under Bailey couldn't they have stopped him? I guess that's my question. Because he's too far from the home. Okay, so that's what I was getting at here. So it's your argument, he was too far from the home. And this is where you get into your argument about the court taking judicial notice of the Google Maps reference. If we decide not to do that, do you think that there's enough in the way of testimonial evidence as to how far he had gotten from the residence? And let me back up even further. Was there testimony that the residence was in the trailer park? Yes. Where is that? There's testimony of the exact location of the residence within the trailer park. Well, was there evidence that aside from Google Maps that the residence was in the trailer park? Did a witness testify that it was a trailer  Yes, there is that testimony. Where did that come from? They talk about the search warrant being for this address within, I believe it's Wilder Haven Trailer Park. I don't think they use the words trailer park, but they use the phrase Wilder Haven Court perhaps. Well, assuming then that to be true, then there was testimony that the defendant had left the trailer park and was proceeding down a particular road at or near its junction with a railroad crossing. So that then might get you past the Bailey problem that you would otherwise have because then it doesn't sound like it's in the immediate vicinity. No. So then that gets us to Terry, and you're at Terry here. What about the inevitable discovery? Yes, Your Honor. In order to meet the test for inevitable, the trial court found inevitable discovery here. But here the state has to show that it would have been discovered by lawful means and without reference to the police error of seizing that cell phone. And I argue that the evidence could not have been found by an independent, untainted line of investigation. The state can't prove independence. The problem is that the state surmises that Detective Borosik would have routinely obtained a search warrant for the cell phone and its card after he discovered the images were created by an LG phone. Why wouldn't that have been a reasonable part of the investigation that followed? How do you pronounce his last name, by the way? I'm pronouncing it Borosik. Borosik? Okay. So Borosik is looking at the laptop and finds the images that were created by an LG cell phone, right? Why wouldn't they actually? I mean, this is what he does. He does this cyber discovery. Why wouldn't he be looking then for occupants of the home, LG devices owned by the occupants of the home? Well, Your Honor, Officer Borosik testifies about the metadata behind the various images and how it shows the creating device of those images. But in none of those other cases did he attempt to trace any of those images to their creating device. He only knew that this LG phone existed because it was seized in inventory. They did not routinely search for these other source devices. And this is more like the Butler case where the officer saw a text flash across the cell phone and then he knew that he wanted a warrant to search that cell phone for its data. Borosik could trace the image to a cell phone, but not necessarily to the cell phone. He's relying on his prior knowledge that this cell phone has been placed in inventory and this cell phone would not have been found under an independent line of investigation because, again, he's relying upon that knowledge that it's already been seized to want it. This is from maybe a standpoint of ignorance because I don't understand, I guess, the technology involved in the detective's work here. But he has the images that are discovered on the laptop and from his analysis of the images he can identify what type of device created them. Is that fair? From his analysis of the metadata embedded with the images, yes. Okay. Why then when he's looking at the images that ultimately become Exhibits 13 and 14 wouldn't he have been able to identify that they were created by an LG cell phone? I think the problem here is that the state is saying that he would have routinely and independently done this, which is the test that they have to make that it's independent. But there were more than these photographs discovered. He was originally charged with other photographs and images as well. How many others? There were originally, I believe it was four that went down to two, four or five that went down to two, Your Honor. Okay. So we're not talking about 4,000, which then would maybe allow you an argument that, well, why would he have done it just on Exhibits 13 and 14? If you're only talking about a handful, why wouldn't it be natural to assume that as part of the investigative process he would have looked for the source device? He didn't for those other images, Your Honor. He only did for the documents that he knew were created by an LG phone that he knew was an inventory. Well, it's an inventory because your client said it didn't belong to him, for one thing. And he said, why not? So he gave it to the police. He testified, right? Yes. He said, why not? The policeman asked for it and I gave it to him. I didn't mind. I didn't want anything to bet on. It didn't belong to me. How, after he asserts that it doesn't belong to him, is it we're supposed to say, oh, but wait. It really is his and it shouldn't have been taken from him. And I think, if Your Honor is getting back to the issue of consent here, this stop was not justified from its inception. So any consent, any actions from that moment of that stop. He's a weapons dealer. We think we're going to search for weapons in his trailer. He leaves the site and he's driving a Bronco. I want to stop him if I'm a police officer to see if there's anything in the back of the Bronco. I don't understand why that's an improper police procedure or a bad seizure. For me to stop the subject of a search warrant, who I know is the target, the specific target of the search warrant, and the targeting is a weapons dealer or stolen computers or whatever it might be and he's selling them, I want to see if he's driving away from the scene with any evidence that we're trying to find in the search warrant. I'm not trying to find that he's got dope in his car. I actually want to make sure, one, I can use the excuse of notifying him, and whether we call that an excuse or kind of a community caretaking. By the way, we're searching your house. I thought you'd want to know. But two, I want to make sure you don't have anything that we're looking for. You're transporting it away from the scene that we're searching. I don't grasp how that is an unlawful seizure. I understand the Terry Stop factors and reasonable suspicion, but it seems to me as if this is a... I don't remember reading cases like this, frankly. I haven't seen very many, where somebody has stopped because they're leaving the scene of what's going to be searched and you're interested in them for assorted reasons. But I don't think it's unreasonable to be wondering whether this fellow, who we're targeting, is taking away a computer or two or a cell phone or two that are used in creating these images. And I think there's one thing when we're talking about officer safety, again, when you're talking about the firearms and everything. Well, really, I'm more interested... He doesn't have access to them if they're in the back of the Bronco. It's really more, I want to know that the evidence isn't being taken away. But he still has a Fourth Amendment right to be secure, and unless you have a particular suspicion to stop that vehicle, the search warrant is here, and my client was over here, and he is not where and when the search warrant was being executed. And that's what the Bailey court cuts off. And again, I would also argue that this error is not harmless beyond a reasonable doubt. The court can do several things. They can focus on the error, and they can also look and see whether the evidence is cumulative. And in this case, the error is uniquely dispositive. It allowed them to upgrade these charges from possession of pornography to creation of pornography, making this a much higher class of crime with a much higher penalty. And for those reasons, the error in omitting the cell phone contents cannot be harmless. And I would ask that Your Honor suppress this evidence. Do I have time to go on to argument two? You do. The lights on the front of the dais there will go off. Yes. Argument three, Gerald Long's jury was not provided with the tools to make a determination of lewdness under Illinois case law, which is defined by a specific six-factor Lamborn test. And the jury therefore found him guilty without making a finding of an essential element of the offense. And I understand up front, this wasn't raised in the trial court, and that ordinarily results in waiver. But the rule of waiver can be modified when necessary to ensure the fundamental fairness of the trial. And that includes ensuring that certain basic instructions essential to a fair determination of the case by the jury are given to the jury. And here, instructions on the element of the offense are those basic instructions. And since their omission creates a fundamental error, I'm asking that you do not apply the waiver rule in this case. What I found fascinating here in the second argument, we're arguing these six Lamborn factors. And they're complicated, interrelated factors. And really, nothing about this seems common sense or instinctual. It's not like, you know, obscenity where I know when I see it. Nudity isn't ludity. And these factors interrelate. And when you look at cases where there were a variety of photographs, some photographs are lewd in a series and others are not, based on those individual photographs. It is such a complicated test. And in this case, the jury is asked to define this word lewd without knowing the test, without having the tools, without having any guidance whatsoever. And I've struggled to come up with another situation where there's something this complicated, a term that has such a defined test with moving factors that the jury is expected just to come up with on their own, and I was at a total loss to put anything. You know, I can differentiate from the state's cases, but I couldn't find anything to say that this is such a complicated test. And yet the jury is asked, look at these photos, use your common sense and determine whether they are lewd. Determine the most critical point in this case, the definition of the word that defines this crime, for which, by the way, there's this test that you're not going to be aware of. And my client only gets the application of this test here on appeal after his conviction. And so for that reason, I'm asking that the waiver rules not apply and that this court vacate Gerald Long's convictions and remand for a new trial with accurate jury instructions that instruct the jury on how to properly apply these six factors. Thank you. Okay. Thank you, Ms. Wilhelm. Ms. McClatchy. May it please the Court. The State is arguing that the trial court did not err in denying defendant's motion to suppress evidence taken from the cell phone. The trial court in this case found that the stop of the defendant was proper as incident to execution of the valid search warrant. It was defendant's burden to prove at the hearing on the motion to suppress that he was not in the immediate vicinity of the execution of the search warrant. However, the testimony at that hearing did not address distances at all or any of the factors listed as relevant in Bailey, such as the lawful limits of the premises, line of sight, or ease of reentry. Although defendant has attached a Google map to the brief as Appendix B, the State asks this court to strike that appendix and not consider any arguments predicated upon it. In that Google map, one of the addresses they use is 3476 North 27th Street, an address that was not mentioned one time in the motion to suppress hearing and not even sure how my opponent came up with that address. Therefore, we'd ask this court to strike the appendix. Alternatively, the State maintains that this was a valid Terry stop of defendant's vehicle. Much like the case United States v. Hensley, defendant was somewhat like being on a wanted poster. Defendant was called the potential suspect in the offense being investigated, the target of the search warrant. This photo had been shown to the officers at an earlier debriefing so that officers, even apart from the search warrant, were zeroing in on defendant. In addition to the information in the search warrant identifying the address as a location of child pornography, the officer knew that defendant's truck was registered to defendant at this address and defendant had a prior arrest for a sexual offense. Defendant was reasonably suspected of involvement in child pornography, a felony. The stop was justified to check his ID, pose questions, and detain him briefly. Alternatively, and this is the ground that the trial court relied on, the cell phone was a product of inevitable discovery. The evidence would have been inevitably discovered without the alleged improper stop of defendant's vehicle. In this case, an independent investigation was already in progress. The investigation was untainted by the alleged illegal stop, and the condition of the evidence would have been the same as the data could be recovered even if deleted from the cell phone. The police were searching defendant's house for evidence of child pornography when defendant was stopped in his vehicle. The SD card in the cell phone in defendant's possession would have inevitably been discovered because after the computers at the residence were seized and searched pursuant to the search warrant, the detective was able to determine that the photographs on the computer hard drive had been downloaded from an LG phone. The computer search revealed images and a video with defendant on the video, and the computer search revealed that these images were created by an LG phone. The officers would have applied for and been given another search warrant for an LG phone belonging to defendant or someone in his house based on information gleaned from the search of the computer. In any event, the inevitability of the discovery of the cell phone and the SD card was a question of fact, and this court should defer to the trial court's judgment. The state also maintains that any error was harmless in this case. The state relied on circumstantial evidence to establish that defendant took the photos apart from the evidence found on the phone. The data on the laptop indicated the photos were taken by a mobile device. The two minors and their father testified that defendant hung around their house and them during the time period during which the photos were taken. The detective and the two minors identified defendant as being in a video taken by a mobile device in the hallway of their house. The two minors testified that the video was taken around the same time as the two photos at issue here. The video was found on the laptop in the same folder as the two photos at issue here. In addition, the photos were located in a folder which was user created and nested in multiple other folders showing a guilty conscience. The fact that defendant took the images was not directly disclosed even by discovery of the cell phone evidence, but rather by the evidence presented by the two girls. The defendant hung around with them at their house and the defendant took a video of them around the same time. The state would ask based on all these arguments that this court affirmed the trial court's decision on the motion to suppress. As for the, are there any questions? As for the jury instruction, the state maintains that this issue was forfeited by the failure to tender an instruction on the definition of lewd and failing to include this issue in the post-trial motion. The plain error doctrine does not apply when no error occurred and the state maintains no error occurred in this case. The jury instructions given were Illinois pattern jury instructions and are presumptively proper. The jury did not request the definition of lewd and therefore the court did not have a duty to supply a definition. The jury made a defining on the element of lewdness but did so based on common understanding of the word lewd. A Supreme Court case, Garrison, found that the expression, quote, lewd exposure, end quote, is not unconstitutionally vague given its common understanding. Moreover, there is a danger to listing factors and I think the Second District case, Finn, is an example of that. In that case, the court stated the sixth factor of Lamborn has proven quite difficult to apply. They go through a multi-page analysis of the sixth factor and whether the point of view is from, or whether it matters, whether you're considering things that are external to the photograph. Those are questions that the jury might have just been more confused by if they had been given, perhaps, the Lamborn factors. Any error did not amount to plain error where the evidence was not closely balanced in this case. And the second prong of plain error is difficult to meet because the jury in this case was instructed on the essential elements of the offense and any error was not so grave and fundamental that the plain error doctrine should apply in this case. Is there any questions? The state would ask the court to affirm the defendant's conviction. Okay. Thank you. Ms. Wellham, rebuttal argument. Your Honor, I would argue that my burden is to show that Gerald was not in the immediate vicinity when the search was occurring. And although the state asked to strike the map, you can use a Google map and ask the court to take judicial notice to show spatial distance, the distance between points. And here, again, I can't necessarily control how a map is printed when I'm trying to create one. And this wasn't a question in the trial court. So as in Bailey, if this record is not sufficient, I would ask that this court remand for a limited hearing to determine Gerald's locations and distance, and also to determine then, under Bailey, whether reasonable suspicion exists, since that was not a question asked by this court. On the jury instruction argument, I'm asking for review under Supreme Court Rule 451C. It's coextensive with this plain error clause, and it has basically the same problems, whether the evidence is closely balanced and the error is so When you talk about the jury not requesting this test, the jury didn't know that there was a test for ludity. They were simply told to use your common knowledge and decide whether or not these photos are lewd. However, this court in McSwain has found that it's proper to give this six-point test because it gives guidance to the jury, and that the jury is allowed and is able to properly apply it. McSwain's a little bit different, because the jury asked for the definition of lewd. The trial court declined, but instead gave them the Lamborn factors, and we found that it was not error to give the Lamborn factors. It's different than saying that the court has a responsibility to instruct the jury on the Lamborn factors. I realize that it is a bit different, because here the jury didn't ask for this. However, the jury had no idea that such a definition was out there. And again, my client stands convicted of ludity when the specific six-point test to define that very word was never presented to the jury, and the jury never had a chance, and was instead applied their common knowledge of what we all know to be a very complex situation. And for that answer, I'm sorry, for that reason, I'm asking that this court vacate its convictions and remand the cause to a new trial with complete and accurate jury instructions on these factors. Thank you. Okay, thank you. Thank you both. The case will be taken under advisement and a written decision on a child issue. Court is adjourned.